Louise Hensley McDOWELL et vir, Appellants,

v.

CENTRAL POWER & LIGHT COMPANY, Appellee.

No. 330.

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 19, 1967.

W. T. McNeil, of Vance, Vance & McNeil, Edna, for appellants.

H. K. Howard, Allen Wood, of Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a condemnation case. Central Power & Light Company instituted condemnation proceedings in the County Court of Jackson County to condemn an easement for two electric transmission lines across appellant McDowell's land. The condemnor objected to the award of the commissioners and perfected its appeal to the county court where the case was tried before a jury. Judgment was entered in favor of the landowners for the value of the easement taken. The jury found no damages to the remainder. The landowners, being dissatisfied with the jury verdict have perfected their appeal to this court raising a single point of error:

"The trial court erred in ruling that appellants' damages to the remainder of their land was limited to the 111.16 acres of land described in condemnor's petition when the uncontroverted evidence showed that the tract of land owned by landowners from which the easement was carved exceeded 200 acres, all of which was a single tract of land undivided by fence or otherwise and all of which was devoted to the same use."

The landowners owned a rather large ranch northeast of Port Lavaca in Jackson County, a portion of which fronted on both sides of Farm to Market Road 1593. One particular tract of landowners' land called "C–2" included a rectangular shaped parcel of land of 111.14 acres on the west side of the Farm to Market Road. It was this tract out of which the easement was sought by condemnor and which was described by condemnor in its petition for condemnation. There is no question that the description of landowners' land was sufficient for jurisdictional purposes. Miers v. Housing Authority of City of Dallas, 153 Tex. 236, 266 S.W.2d 842 (1954). The landowners made the usual stipulations which entitled them to open and close the evidence and arguments. During the course of the trial it was developed without objection, that the landowners owned additional land contiguous to the described land on the same side of the Farm to Market Road. This additional land to the west of the property described in the petition, fronted on Swan Lake, Catfish Bayou and had deep water facilities through Lavaca Bay. All of the land was under the same fence with no cross fences. Such additional land was legally described as being two 46 acre tracts and was acquired by landowners at or about the same time as the larger "C–2" tract. The landowners made no exceptions to the petition of condemnor and condemnor raised no objection to the testimony concerning the ownership of the additional land.

The conflict came when landowners' expert witness was about to testify as to the damage to the remainder of landowners' land. Objection by the condemnor to any testimony concerning damages to landowners' additional tract was made because the original description in the petition for condemnation described only 111.14 acres and because of the stipulations entered into at the time of the trial. Condemnees contended that they were entitled to have such testimony admitted because they were the owners of the entire 200 acre tract (111.14 acres plus the 2—46 acre tracts); that their ownership had been developed in the evidence without objection; that the land constituted a single tract; and that to refuse them the right to show their damages to the entire remainder of the land which they owned, would deny them the right and opportunity to collect and receive the total damages due them by virtue of the condemnation proceedings. The condemnor's objection was that they were not prepared to try the case on any other basis than that set forth in the pleadings which limited the property to 111.14 acres; that the parties had stipulated to the jurisdictional facts; and that it would be manifestly unfair and unjust to permit the landowners to file additional pleadings which would then result in requiring the condemnor to seek a continuance or mistrial. When the court asked both parties if they wished to join in a mistrial, neither party sought such action. The trial court then reasoned and said: that in view of the fact that the parties entered into a stipulation whereby they have agreed that the property made the basis of arriving at the damages, was the property that is described in the petition: "I am going to rule this way, and that is as far as having the witness testify as to cash market value of the remainder on October the 14th, 1965, we will limit it to the 111.16 acres." Landowners objected to the court's ruling but did not prove up a bill of exceptions.

Although the stipulation by the parties concerning the description of the land was sufficient to give the county court jurisdiction; and procedural wise it was sufficient to give the landowners the right to open and close the testimony and argument, the burden, nevertheless, of proving the damages was upon the landowners, not only as to the part taken, but as to the remainder; State v. Jackson, 388 S.W.2d 924 (Tex.Sup.1965); City of Teague v. Stiles, 263 S.W.2d 623 (Tex.Civ.App.—Waco 1954, n. r. e.); Ready v. City of Marshall, 234 S.W.2d 104 (Tex.Civ.App.—Ft. Worth 1950) and although it was error under these

fact circumstances for the trial court not to permit the landowners to attempt to prove up all legally compensable damages to all their land (affected by the taking), such error, as will be demonstrated hereafter, was harmless.

 In order to obtain a reversal of the judgment, the landowners have the burden to show that the rejection of the proffered testimony was error, and that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure; Gordon v. Aetna Casualty & Surety Company, 351 S.W.2d 602 (Tex. Civ.App.—Eastland 1961, err. ref.). In order to determine the nature and the character of the disputed evidence that was excluded, and to estimate the influence that such evidence would likely have had upon the minds of the jury, and in order to determine the fact issue to which it relates, the landowners should have developed by a bill of exceptions what the excluded testimony would have been. Rules 372, 373 and 418(c), Tex.R.Civ.P.; Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155 (1945); State v. Evans, 340 S.W.2d 99 (Tex.Civ.App.—Waco 1960, n. r. e.); Gass v. Baggerly, 332 S.W.2d 426 (Tex. Civ.App.—Dallas 1960); Southerland v. Porter, 336 S.W.2d 841, 845 (Tex.Civ.App. —Amarillo 1960, n. r. e.), where the court quoted from Texas Law of Evidence, McCormick & Ray, Vol. 1, Sec. 30, p. 31, as follows:

"* * * Where the ruling excludes evidence counsel must show what the proffered evidence is or what the expected answer of the witness would have been" in order for his objection to be preserved on appeal.

The land of appellants fronted on the east by Farm to Market Highway 1593. The easement sought by the condemnor was also near this east boundary line running generally north and south and parallel to the Road. Next to the Road was a pipeline easement of Houston Pipeline Company; next to this easement and parallel to it was the Port Comfort & Northern Railroad tracts; then came the Southern Pipeline Corporation easement; next to it was the Tennessee Production Pipeline Company easement; and finally the subject easement. All of the land was unimproved pasture used exclusively for grazing. Condemnor's expert witnesses, after testifying as to their opinion of the value of the land taken, testified that there was no damage to the remainder of landowners' property by virtue of this new easement. On cross examination one of condemnor's witnesses admitted that the land nearest the lake and bayou was more valuable. However, even with water frontage, the witness testified, there would be no damage to the land because of the easement to be taken.

Landowners' own expert witness testified: "It makes very little difference whether we consider here 111 acres or we consider the whole 200 acres in the appraisal, because this land is contiguous and owned by the same party. As far as the appraisal value, whether you appraise a part of it or the whole thing is a very minor thing." The landowners' own exhibit number 2 concerns a plat of the easement to be taken and prepared by a registered public surveyor. It described the subject property of landowners as: "Showing Central Power and Light Company's 120.0' easement across Louise Hensley McDowell 111.26 acre tract of land, more or less, * * *." It is apparent that the landowners knew that the taking concerned the 111 acre tract. The jury found damages to the amount taken for the easement in the amount of $1744.00, and found that the reasonable market value of the remainder of landowners' property had exactly the same value before the condemnation as it did immediately after the taking..

Since the jury found that there were no damages resulting from the taking as to the remainder of 111.14 acres, we do not find from the record that the court's ruling on the evidence of damages to lands

further to the west amounted to such a denial of appellants' rights as was calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 433, Tex.R.Civ.P. The burden was on the appellants to demonstrate that the exclusion of the evidence probably caused the rendition of an improper judgment. We hold that the appellants have not discharged this burden. Gordon v. Aetna Casualty & Surety Company, supra; City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860 (1952); Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952). Appellants' point is overruled.

Judgment of the trial court is affirmed.