

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 10, 1990

Honorable Michael J. Guarino
Criminal District Attorney
Galveston County
405 County Courthouse
Galveston, Texas   77550

Opinion No. JM-1185

Re:  Whether a community
justice council created
pursuant to article 42.13,
Texas Code of Criminal
Procedure, is subject to
the Open Meetings Act,
V.T.C.S. art. 6252-17
(RQ-1879)

Dear Mr. Guarino:

You state that House Bill 2335 of the 71st regular
session of the Legislature has created community justice
councils for counties wishing to establish a community
corrections facility.  See Acts 1989, 71st Leg., ch. 785,
art. 1, at 3471.  You ask whether a community justice
council is subject to the Texas Open Meetings Act, article
6252-17, V.T.C.S.

Some background about the structure of the criminal
justice system and the state-local relationships established
by House Bill 2335 is necessary to understand what a
community justice council does and whether it is a govern-
mental body subject to the Open Meetings Act.  House Bill
2335 made many changes in the structure of the criminal
justice system at the state and local level, some of which
give the counties financial incentives for supervising
felony probationers and taking other measures to reduce the
number of persons sent from the counties to be incarcerated
in state prisons.  Acts 1989, 71st Leg., ch. 785, art. 3, at
3482.  It created the Texas Department of Criminal Justice
as the state agency with primary responsibility for
confining felons, developing a system of state and local
punishment, supervision, and rehabilitation programs, and
reintegrating felons into society after release from
confinement.  V.T.C.S. art. 4413(401).  The community
justice assistance division (the division) is established
within the Department of Criminal Justice.  V.T.C.S. art.
4413(401), § 1.11; see Code Crim. Proc. art. 43.13.  The
division is responsible for establishing minimum standards
for programs, facilities, and services provided at a local

level by a community supervision and corrections department, and for certifying and funding the programs, facilities, and services provided by such departments. V.T.C.S. art. 4413(401), § 1.12.

Community supervision and corrections departments are to be established by the district judge or judges trying criminal cases in each judicial district in the state. Code Crim. Proc. art. 42.131. These departments serve the courts by conducting presentence investigations and risk assessments, supervising and rehabilitating probationers, enforcing the terms of probation, and operating community corrections facilities. Id. § 2. The judge or judges appoint a department director, who employs other persons to do the work of the department. The district judge or judges may establish a community justice council to serve the department. The judges must do so before the department, county, or city may establish a community corrections facility under article 42.131 of the Code of Criminal Procedure, and before a county may establish a county correctional center under subchapter H, chapter 352 of the Local Government Code. Code Crim. Proc. art. 42.131, § 3(b). The council's primary responsibility is to prepare a criminal justice plan for submission to the division in fulfillment of a reporting requirement and as a condition of the department's receipt of state aid. Code Crim. Proc. art. 42.13, §§ 3, 6. When the division has made funds available to a department to provide facilities, equipment, and utilities for community corrections facilities, the council has a role in recommending expenditures. Finally, the council "shall provide continuing policy guidance and direction for the development of criminal justice plans and community corrections facilities and programs." Id. art. 42.131, § 3.

The council is composed of various officers from the county or counties wherein it is established. Each officer is chosen by the other persons who hold the same kind of office he does in the county or counties served by the council. For example, a council includes "a sheriff of a county to be served by the [community corrections] facility, chosen by the sheriffs of the counties to be served by the facility." Code Crim. Proc. art. 42.131, § 3(b)(1). The following officers of political subdivisions to be served by the community corrections facility are also represented on the council: a county commissioner or a county judge; a city council member of the most populous municipality in a county to be served by the facility; no more than two state legislators; the presiding judge of a judicial district, the judge of a statutory county court exercising criminal jurisdiction; a county attorney with criminal jurisdiction;

a district attorney or criminal district attorney; and an elected member of the board of trustees of an independent school district in a county to be served by the facility.

Both the composition and the function of the community justice council are relevant to determining whether it is a governmental body subject to the Open Meetings Act. The act defines "governmental body" in part as

> any board, commission, department, committee, or agency within the executive or legislative department of the state, which is under the direction of one or more elected or appointed members . . . .

V.T.C.S. art. 6252-17, § 1(c).

Since the council is established and operates only at a local level, it is not "within the executive or legislative department of the state." See, e.g., Attorney General Opinions JM-596 (1986); JM-340 (1985). The definition of "governmental body" applicable to local entities is as follows:

> every Commissioners Court and city council in the state, and every deliberative body having rule-making or quasi-judicial power and classified as a department, agency, or political subdivision of a county or city; and the board of trustees of every school district, and every county board of school trustees and county board of education; and the governing board of every special district heretofore or hereafter created by law.

V.T.C.S. art. 6252-17, § 1(c).

The criminal justice council is not a governing body of a city or county. As a body established by the district judges and composed of elected officers of various jurisdictions, it cannot be considered a department, agency, or political subdivision of a county or city. See Attorney General Opinions JM-740 (1987); JM-183 (1984); MW-28 (1979). Nor is it one of the education entities named in the statute.

A more detailed analysis of the council's functions is necessary to determine whether or not it is "the governing board of . . . [a] special district . . . created by law." The decision in Sierra Club v. Austin Transp. Study Policy Advisory Comm., 746 S.W.2d 298 (Tex. App. - Austin 1988,

writ denied), determined that the Austin Transportation Study Policy Advisory Committee (ATSPAC), a seventeen-member committee consisting of state, county, regional, and municipal public officials, was a special district subject to the Open Meetings Act.[1] The ATSPAC had been designated a "Metropolitan Planning Organization" pursuant to a provision of the Federal-aid highway law directed at enabling the Secretary of Transportation to cooperate with state and local officials in developing transportation plans and programs based on transportation needs. 23 U.S.C. § 134. A metropolitan planning organization is "the forum for co-operative transportation decision making." 23 C.F.R. § 450.104(b)(3).

The opinion in <u>Sierra Club</u> said that the ATSPAC was charged with developing various transportation plans for the use of federal agencies in determining funding for the local projects. 746 S.W.2d at 300. "As a result, ATSPAC plays a vital role in deciding which highway projects are planned, built and funded in the Austin area." <u>Id.</u> at 300-01. "Its decisions affect highway planning in Travis, Hays, Caldwell, Bastrop, and Williamson counties." <u>Id.</u> at 300. The court thus emphasized the decision-making function of the ATSPAC.

The court also pointed out that committees like the ATSPAC did not exist when the Open Meetings Act was adopted in 1967, but that when its functions are compared to those of the governmental bodies defined in the act, "it is clear that the committee is just the sort of body the Open Meetings Act was designed to govern." <u>Id.</u> at 301. It quoted the following dictionary definition of "special district":

> A limited governmental structure created to bypass normal borrowing limitations, to insulate certain activities from traditional political influence, to allocate functions to entities reflecting particular expertise, to provide services in otherwise unincorporated areas, or <u>to accomplish a primarily local benefit or improvement</u>, <u>e.g.</u>, parks and planning, mosquito control, sewage removal.

---

1. Attorney General Opinion JM-183 (1984) held that a library council consisting of representatives chosen by governing bodies of political subdivisions was a "hybrid" body that did not fit any definition of "governmental body" in the Open Meetings Act.

Black's Law Dictionary (5th ed. 1986) (emphasis added).

Relying particularly on the underlined language, the court found that the ATSPAC was a special district, in that it was designed to accomplish the primarily local benefit or improvement of bringing federal highway funds into the Austin urban area for highway planning and construction. 746 S.W.2d at 301.

In deciding that the ATSPAC was a governmental body subject to the Open Meetings Act, the court first considered the powers it exercised and applied a test similar to that applied by the courts and by prior opinions of this office to decide whether an entity in the executive branch must comply with the act. Among other prerequisites for establishing that a committee, board, or other entity in the executive branch of government is subject to the Open Meetings Act, it must deliberate or act on a matter of public business or policy over which it has supervision or control. See, e.g., Gulf Regional Educ. Television Affiliates v. University of Houston, 746 S.W.2d 803 (Tex. App. - Houston [14th Dist.] 1988, writ denied); Attorney General Opinions H-772 (1976); H-438 (1974). An advisory body, with no power to supervise or control public business, is not subject to the Open Meetings Act. Attorney General Opinion JM-331 (1985) (citizens advisory panel of Office of Public Utility Counsel); H-994 (1977) (advisory committee studying selection process for university president).

A department or agency of a city or county is a governmental body within the act if it has rule-making or quasi-judicial powers. V.T.C.S. art. 6252-17, § 1(c). In determining whether an entity is a governmental body within this provision, this office also considers whether it has authority to exercise governmental power, or whether it has only an advisory role. Attorney General Opinion MW-506 (1982) determined that the board of trustees of a city firemen's retirement fund was an agency of the city subject to the Open Meetings Act. The board had power to receive, manage, and disburse the retirement fund; moreover, it exercised quasi-judicial powers in hearing and determining applications for benefits. Attorney General Opinion H-467 (1974), in contrast, dealt with a city library board that was authorized to act in an advisory capacity only and held that insofar as it truly acted only in an advisory capacity, it was not required to comply with the Open Meetings Act.

The responsibilities of the criminal justice council, and its place in the criminal justice hierarchy, persuade us that it is properly characterized as an advisory body, and not a governmental body within the Open Meetings Act. As we

have already said, its most important function is to prepare the community justice plan that a community supervision and corrections department must submit to the community justice assistance division before the city, county, or the department may establish certain correctional facilities. Code Crim. Proc. arts. 42.13, § 3; 42.131, § 3. As of September 1, 1990, a department must submit a plan to the division as a condition of receiving state aid. Id. art. 42.131, §§ 6, 11.

The division determines the format for community justice plans. Id. § 2(a)(3). Section 6 of article 42.13 sets out the information that must be included in a plan. It must give a detailed description of the services provided by the department and new facilities or programs proposed for the department, such as electronic monitoring programs and community corrections facilities. It also must include a description of services needed within the area, information about contracts necessary to achieve programs and facilities, and "a statement of commitment by the community justice council and the department to achieve a targeted level of alternative sanctions." Id. § 6(b)(5). The plan may include other information, such as information about personnel training or program evaluation, as well as "other details or options that the community justice council wishes to include."

The plan is thus primarily descriptive of corrections facilities that are established or may be established by a community supervision and corrections department, a county, a municipality, or a combination of these. See Code Crim. Proc. art. 42.131, § 3. It appears that the council's responsibility is to gather and report information about the facilities operated by these entities but not to decide how the facilities are to be operated or which facilities are to be proposed. Decisions on these matters are made by the division, the district judges, the department, and the political subdivisions operating correctional facilities. Moreover, a community justice council may not submit a plan to the division as a condition of payment of state aid to a department unless the plan is first approved by the district judges who manage the department served by the council. Id. art. 42.13, § 6.

The council also has the following responsibility over expenditures:

> The district judge or judges may authorize expenditures of funds provided by the division to the department for the purposes of

> providing facilities,  equipment, and utili-
> ties for community corrections facilities if:
>
> (1)  <u>the community justice council  recom-</u>
> <u>mends the expenditures</u>; and
>
> (2)  the division provides  funds for  the
> purpose of assisting in the establishment  or
> improvement of the facilities.

Code Crim. Proc. art. 42.131, § 10 (emphasis added).

In this case,  the council  makes recommendations,  but the judge or judges  make the decisions about  expenditures. In <u>Gulf Regional Educ.  Television Affiliates v.  University of Houston</u>, <u>supra</u>, at 809, the court found that an auxiliary enterprise of  a state  university was  subject to the  Open Meetings Act because it spent public funds and operated with little control  or supervision  by the  university board  of regents.  In  contrast,  the community  justice  council recommends expenditures, but does not expend public funds on its  own  authority.  In Attorney  General  Opinion  H-467 (1974), this office  decided that a  city library board  was not  subject  to  the  Open Meetings Act because  it  was empowered to act in an advisory capacity only.  The  library board was authorized to recommend  the adoption of rules  to administer the library, to make recommendations for  library facilities, and to submit its proposed expenditures for  the approval of the city council.

In our opinion, a criminal  justice council acts in  an advisory capacity only, like the  library board at issue  in Attorney General Opinion H-467.  It does not have the  power to make decisions that the  courts found the ATSPAC to  have in <u>Sierra Club</u> and the auxiliary enterprise in <u>Gulf Regional Educ. Television Affiliates</u>.  It is not  "the sort of  body the Open Meetings Act was designed to govern." <u>Sierra Club</u>, <u>supra</u>, at 301.  Although it assists the department's efforts to  secure  state  funding  for  community  corrections facilities, the  council does  not "<u>accomplish</u> a  primarily local  benefit  or  improvement."  <u>Id.</u>  (emphasis  added). Thus, it is not a "special district" within the <u>Sierra  Club</u> case.  Accordingly,  a criminal  justice  council  is  not subject to the Open Meetings Act.

## S U M M A R Y

A criminal justice council established by the district judge or judges under section 3 of article 42.131 of the Code of Criminal Procedure is not subject to the Open Meetings Act.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General