

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 25, 1996

The Honorable Fred Hill
Chair
Committee on Urban Affairs
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-426

Re: Whether a housing authority created under chapter 392 of the Local Government Code is subject to the Open Meetings Act (RQ-897)

Dear Representative Hill:

You ask whether a housing authority created under chapter 392 of the Local Government Code is subject to the Open Meetings Act, Gov't Code ch. 551. The Open Meetings Act applies to the meetings of governmental bodies. *Id.* § 551.002. It defines the term "governmental body" to include the following:

>    (B)  a county commissioners court in the state;

>    (C)  a municipal governing body in the state;

>    (D)  a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;

>    . . . .

>    (H)  the governing board of a special district created by law.

*Id.* § 551.001(3). The latter two definitions are the most relevant for purposes of your query.

Chapter 392 of the Local Government Code provides for the creation of municipal, county and regional housing authorities. Sections 392.011 and 392.012 provide for the creation of municipal and county housing authorities, which may not transact business until the governing body of the municipality or county declares by resolution that there is a need for the authority. Pursuant to section 392.013, a regional housing authority is created if the commissioners courts of two or more contiguous counties declare by resolution that there is a need for such an authority. Each type of housing authority is a "public body corporate and politic."[1] The five commissioners of a municipal or county housing authority are appointed by the municipal governing body's presiding officer or the

---

[1]Local Gov't Code §§ 392.011(b), .012(b), .013(b).

commissioners court, respectively.[2] Each participating county appoints at least one commissioner to a regional housing authority.[3] A housing authority "exercises public and essential governmental functions and has the powers necessary and convenient to accomplish the purposes and provisions" of chapter 392.[4] The powers of a housing authority are vested in the commissioners of the authority, who may delegate a power or duty to an agent or employee.[5]

Texas case law and opinions of this office have concluded that a municipal housing authority is a division of the city that created it.[6] Similarly, this office has concluded that a county housing authority is a division of the creating county.[7] On the basis of this authority, we conclude that a municipal housing authority is "a department, agency, or political subdivision of a . . . municipality" and that a county housing authority is a "a department, agency, or political subdivision of a county" for purposes of section 551.001(3)(D) of the Open Meetings Act.

We also conclude that a municipal or county housing authority is a "deliberative body that has rule-making or quasi-judicial power" for purposes of section 551.001(3)(D). A housing authority takes action based on a vote of the commissioners,[8] is authorized to make rules to implement its powers and purposes,[9] and has extensive governmental powers[10] that include the authority to acquire

---

[2]*Id.* §§ 392.031, .032.

[3]*Id.* § 392.033.

[4]*Id.* § 392.051(a).

[5]*Id.* § 392.051(b), (c).

[6]*See Miers v. Housing Auth. of Dallas*, 266 S.W.2d 487, 490 (Tex. Civ. App.--Dallas 1954, writ ref'd n.r.e.) (holding housing authority was division of city that created it and therefore subject to bond requirements governing cities in condemnation cases); *Aetna Casualty & Surety Co. v. Glidden Co.*, 283 S.W.2d 440 (Tex. Civ. App.--Eastland 1955), *rev'd on other grounds*, 291 S.W.2d 315 (Tex. 1956) (holding housing authority was division of city that created it and therefore subject to statute governing public construction performance bonds); Attorney General Opinions DM-71 (1991) (municipal housing authority created under Local Government Code chapter 392 is division of municipality for purposes of Local Government Code, section 215.001 preempting municipal regulation of firearms), JM-573 (1986) (municipal housing authority, as division of city, is subject to competitive bidding requirements applicable to cities), MW-132 (1980) (same).

[7]Attorney General Opinion C-760 (1966) (county housing authority, as division of county, subject to laws governing sale of excess county property) (relying upon *Miers*, 266 S.W.2d 487, and *Aetna*, 283 S.W.2d 440).

[8]Local Gov't Code § 392.036.

[9]*Id.* § 392.065(5).

[10]*See id.* §§ 392.051, .052.

real property by eminent domain[11] and to issue bonds.[12] Furthermore, a municipal or county housing authority's ability to act, which is separate from and does not require the approval of the creating municipality or county, distinguishes it from departments of cities and counties that do not fall within the definition of "governmental body" because they are merely advisory bodies. *See, e.g.,* Attorney General Opinion H-467 (1974) (city's library board, which acted solely in advisory capacity and had no rule-making authority, not subject to Open Meetings Act).

We also note that this office has stated that "[j]ust as the Housing Authorities may receive the benefit of statutes applying to cities and counties, so they must comply with the statutes applying to cities and counties where such statutes do not conflict with the powers granted to them" by law.[13] Chapter 392 requires a housing authority to hold a public meeting about a proposed housing project before the site for the project is approved.[14] Some of the statutory requirements specifically applicable to such a meeting exceed the requirements of the Open Meetings Act.[15] We do not believe that these requirements conflict with the Open Meetings Act, because a housing authority can comply with these specific meeting requirements in chapter 392 and comply with the more general requirements in the act. A housing authority's compliance with the Open Meetings Act would not conflict with any provision of Local Government Code chapter 392. Therefore, we conclude that a municipal or county housing authority is a "governmental body" under section 551.001(3)(D) of the Open Meetings Act.[16]

---

[11]*Id.* § 392.061.

[12]*See id.* ch. 392, subch. E.

[13]Attorney General Opinion C-760 (1966) at 5.

[14]*See* Local Gov't Code §§ 392.053, .054(a) ("In addition to any other notice required by law . . . .").

[15]*See, e.g., id.* §§ 392.053(d) (requiring housing authority to allow certain persons to comment at meeting), .054 (requiring notice to be posted at county courthouse and city hall, published in newspaper, mailed to certain persons, and posted on sign at the proposed location 30 days prior to meeting).

[16]We have received a letter brief from the Dallas Housing Authority ("DHA") contending that it is not subject to the Open Meetings Act. The letter brief refers to an excerpt from a transcript of a hearing before a federal district court in which the court ruled from the bench that the "Open Meetings Act is not applicable to the DHA board of directors. It is not within the plain language of the Act. The DHA board is not a deliberative body. It does not have rule-making or quasi-judicial power. It is without question not a department, agency or political subdivision of the City of Dallas." Transcript of Hearing Before the Honorable Jerry Buchmeyer at 201, *Public Housing Steering Comm., Inc. v. Housing Auth.,* No. 3:95-CV-1374-R (N.D. Tex. Sept. 19, 1995).

Lower federal court decisions interpreting Texas law are not binding on Texas courts. *See Longview Bank & Trust v. First Nat'l Bank,* 750 S.W.2d 297, 300 (Tex. App.--Ft. Worth 1988, no writ); *Woodard v. Texas Dep't of Human Resources,* 573 S.W.2d 596, 598 (Tex. App.--Amarillo 1978, writ ref'd n.r.e.) (citing *Texas Oil & Gas Co. v. Vela,* 405 S.W.2d 68, 73-74 (Tex. Civ. App.--San Antonio 1966), *judgm't set aside on other grounds,* 429 S.W.2d 866 (Tex. 1968)). Given the many state cases supporting the conclusion that a municipal housing authority is a division of the city that created it, *see* authorities cited *supra* note 6, and the fact that chapter 392 of the Local Government Code vests the power of a housing authority in the commissioners of the authority, *see* Local Gov't Code § 392.051(b), provides that the commissioners
(continued...)

A regional housing authority is created by two or more counties and extends into two or more counties. We are not aware of any cases holding that a regional housing authority is a division of a county or counties. Given the lack of precedent that would support the conclusion that a regional housing authority is a governmental body under section 551.001(3)(D), we consider whether a regional housing authority is a "special district" under section 551.001(3)(H) of the Open Meetings Act. In *Sierra Club v. Austin Transportation Study Policy Advisory Committee*, 746 S.W.2d 298 (Tex. App.--Austin 1988, writ denied), the court of appeals considered whether the Austin Transportation Study Policy Advisory Committee ("ATSPAC") -- a seventeen-member committee consisting of state, county, regional, and municipal government officials, created pursuant to federal law to enable state and local participation in planning federal highway projects -- was a "special district" under the definition of "governmental body" now set out in section 551.001(3)(H). Noting that the term "special district" had not yet been defined in case law, the court relied upon the following broad definition of "special district" in *Black's Law Dictionary*:

> A limited governmental structure created to bypass normal borrowing limitations, to insulate certain activities from traditional political influence, to allocate functions to entities reflecting particular expertise, to provide services in otherwise unincorporated areas, or to accomplish a primarily local benefit or improvement, *e.g.*, parks and planning, mosquito control, sewage removal.[17]

Emphasizing the importance of ATSPAC in planning and obtaining federal funds for highway construction in the Austin urban area (which extended into five counties) and finding that ATSPAC was an official body designated by the governor in order to "accomplish a primarily local benefit or improvement," the court concluded that ATSPAC was a "special district" within the Open Meetings Act's definition of "governmental body."

A regional housing authority falls within the *Sierra Club* court's broad construction of the term "special district." Because a regional housing authority has extensive governmental powers[18] -- including the authority to acquire real property by eminent domain[19] and to issue bonds[20] -- and a circumscribed mission -- to provide low-income housing -- it is a "limited governmental structure." In addition, the legislature appears to have authorized contiguous counties to join together to create

---

[16](...continued)
take action based on a majority vote, *see id.* § 392.036, and authorizes the commissioners to make rules, *see id.* § 392.065(5), we believe a state court addressing this question would reach a different conclusion.

[17]*Sierra Club*, 746 S.W.2d at 301 (quoting BLACK'S LAW DICTIONARY 1253 (5th ed. 1986)).

[18]Local Gov't Code §§ 392.051 (general powers), .052 (operation of housing projects), .056 (ownership of real property), .057 (investment of funds), .065 (miscellaneous powers).

[19]*Id.* § 392.061.

[20]*See id.* ch. 392, subch. E.

a regional housing authority in order to allocate the task of providing low-income housing to an entity with particular expertise and to accomplish a primarily local benefit or improvement. Even a regional housing authority extending into several counties would be no less local in scope than the committee at issue in *Sierra Club*, whose activities affected a five-county area. Finally, a regional housing authority, with its extensive authority to act to achieve its purpose,[21] is in no respect merely an advisory body.[22] Accordingly, we conclude that a regional housing authority under chapter 392 is a "governmental body" subject to the Open Meetings Act.

## S U M M A R Y

A municipal, county or regional housing authority created under chapter 392 of the Local Government Code is a "governmental body" subject to the Open Meetings Act, Gov't Code ch. 551.

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[21]*See supra* notes 18-20.

[22]In Attorney General Opinion JM-1185, this office concluded that a criminal justice council is not a special district under *Sierra Club* because it acts in an advisory capacity only. Attorney General Opinion JM-1185 (1990) at 5.